UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| McKeown International, Inc., § | | |
|   *Plaintiff,* § | | |
| § | | Civil Action Number |
| v. § | | 1:16-cv-1004 |
| § | | |
| Princeton Insurance Group, L.L.C., § | | Jury |
|   *Defendant* § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW PLAINTIFF, McKeown International, Inc. ("McKeown"), and files this its Original Complaint, complaining of DEFENDANT, Princeton Insurance Group, L.L.C., ("Princeton"), and in support thereof would show as follows:

### I.  PARTIES

1. Plaintiff is a domestic corporation with its principal place of business in Williamson County, Texas.

2. Defendant is a foreign limited liability company, organized under the laws of the state of Illinois.  It can be served with process through its registered agent in Illinois, Kayla Samolinski, at 418 S. Main St., Princeton, Illinois 61356.

### II.  JURISDICTION & VENUE

3. Subject matter jurisdiction is based on 28 U.S.C.A. §1332(a) in that there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, including estimated damages and attorneys' fees which are recoverable by statute.[1]

4. The Court has general jurisdiction over Princeton because it is licensed to sell insurance in Texas, and routinely done so.  The Court has specific jurisdiction over Princeton

---

[1] *See* **Grant v. Chevron Philips Chem. Co.,**, 309 F.3d 864, 873-74 (5th Cir. 2002) (finding attorneys are included in the amount in controversy when they are recoverable by statute or contract).

because it sold insurance to McKeown through its office in Williamson County, Texas, which is the subject of this suit.  Moreover, Princeton's duties were owed to McKeown in Williamson County, Texas, and the damages from Princeton's breach of those duties occurred here.

5.	For the same reasons justifying personal jurisdiction in this state, venue is proper in this Court under 28 U.S.C. §1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in Williamson County, Texas, which is located within the Western District of Texas, Austin Division.

### III.  FACTS COMMON TO ALL CAUSES OF ACTION

*i.  Underlying Facts.*

6.	McKeown International is in the business of providing a wide range of refractory and consumable products to the steel and foundry business.  These products are engineered to withstand the extreme heat and other stresses involved in working with molten metal and similar materials.  McKeown also fabricates production facilities used in the industry.  It provides these products and services all over the world.

7.	In 2014, McKeown entered into discussions with U.S. Steel regarding potential construction of a manufacturing facility.  U.S. Steel required certain insurance coverages, including workers compensation insurance.  McKeown contacted Ernie Parr, an agent with Princeton, asking that Princeton provide quotes for the required insurance, including workers compensation, so that McKeown could accurately prepare a bid for U.S. Steel.

8.	Mr. Parr orally quoted a premium rate for the worker's compensation of $5.90 per $100.00 of payroll; the standard nomenclature for quoting such rates.  He later confirmed the rate in writing, noting that it was for "bricklayers/labor (same rate)."  Classification of the type of worker is important, since it determines the premium rate – *i.e.,* an office clerical worker will

have a lower rate than a bricklayer because of the disparate risks for injury.  Classifications are set in Pennsylvania – where the U.S. Steel contract was to be performed – by the Pennsylvania Rating Bureau, and listed in the Pennsylvania Workers Compensation Manual of Rules, Classifications and Rating Values for Workers Compensation and for Employers Liability Insurance ("Manual").  The Manual classifies "Bricklayers" in code "653" for "Masonry."

9. With the $5.90 premium rate in hand, McKeown prepared its labor rate for inclusion in its bid to U.S. Steel.  The labor rate was quoted on an hourly basis, and incorporated the workers compensation premium of $5.90 per $100.00 in compensation.  For example, if the labor rate *without* the worker's compensation premium were $100.00 an hour, then the rate quoted in the bid to U.S. Steel *with* the premium would have been $105.90 an hour.

10. U.S. Steel accepted McKeown's bid for the project in early September 2014, locking in the labor rate as quoted.  However, a few days later, McKeown received the final policy from AIG, the insurance carrier providing the worker's compensation insurance.  Instead of a premium rate of $5.90 per $100.00 as quoted by Princeton, it quoted a rate of $13.85.  So, for each $100.00 of hourly compensation charged to U.S. Steel, McKeown would be undercompensated by $7.95.

11. McKeown attempted to renegotiate the rate with U.S. Steel without success.  When confronted with the misquote, Ernie Parr's first email response was that it "really does not have the big impact you seem to think it has."  On the contrary, it does.

*i.  Damages from Misquote.*

12. The impact from Princeton's misquote is significant.  Specifically, the U.S. Steel contract is for three years, beginning in mid-September 2014.  So, McKeown must pay the increased rate for three years.  For the first year – September 2014 through September 2015 –

labor costs in the masonry code were $1,167,479.00. Under the $5.90 premium rate quoted by Princeton, the premium would have been $68,881.26. However, under the $13.85 rate actually charged, the premium was $161,695.84. Therefore, McKeown paid $92,814.58 more in premiums than it was able to charge U.S. Steel under its contract.

13. Losses for the second and third years of the contract will be similar. Specifically, payroll for employees in the masonry code is expected to be roughly $1.18 million for both years. The premium rate quoted at the beginning of the second year from a new agent was $12.39, so the loss will be slightly less than the third year. The premium rate for the third year is not known, and is currently being quoted. Assuming it is the same as the second year, total losses for all three years will be roughly $250,000.00.

## IV.  CAUSES OF ACTION

### A) NEGLIGENCE.

14. Princeton was negligent in procuring the quote for the "bricklayer" classification, and its negligence proximately caused McKeown damages as described above, measured generally by the increased premium McKeown could not pass on to U.S. Steel – *i.e.,* the difference between the actual premium rate and the $5.90 rate Princeton quoted. The damages were foreseeable. For example, Mr. Parr was told the type of employee the workers compensation insurance was intended to cover, the work they would be doing, and that the premium rate quote he was to provide would be included in the U.S. Steel bid.

15. An insurance agent or broker is "required . . .to use reasonable skill and judgment with a view to the security or indemnity for which the insurance is sought, and a failure in that respect may render him liable to the insured for resulting losses."[2] Among the duties owed are these:

---

[2]  *Higginbotham & Associates, Inc. v. Greer*, 738 S.W.2d 45, 46 (Tex.App.—Texarkana, 1987).

F:\Clients\20000\20741.003 - McKeown Int'l - Princeton Ins Negligenc\ORIGINAL COMPLAINT  - 1st amended - jmw.docx - JMW

> "In Texas, an insurance agent . . . owes the following common-law duties to a client for whom it undertakes to procure insurance:  (1) *to use reasonable diligence in attempting to place the requested insurance* and (2) to inform the client promptly if unable to do so.  [citations omitted].  *A client's request to an insurance agent for a specific type of insurance gives rise to these duties on the part of the agent.*"[3]

16. McKeown reasonably relied on its request to Princeton to obtain an accurate quote, and Princeton's breach of its duty to do so proximately caused McKeown's damages.

### B)  VIOLATIONS OF  TEXAS' INSURANCE CODE §541.051, *et. seq.*

17. Texas' Insurance Code §541.051, *et. seq.*, allows suit for actual damages caused by any person engaging in "an unfair or deceptive act or practice in the business of insurance" as enumerated in Texas Insurance Code.[4]  It also allows suit under the Insurance Code for "unlawful deceptive trade practice[s]" as "specifically enumerated in Section 17.46(b)" of Texas Deceptive Trade Practices Act.[5]  Insurance agents and brokers "are 'persons' engaged in the business of insurance for the purposes of the Insurance Code."[6]  Again, Princeton is licensed by Texas' Department of Insurance to sell insurance in Texas.

*i.  Deceptive Acts and Practices Under Texas' Insurance Code.*

18. Section 541.051 provides that it is

"an unfair or deceptive act or practice in the business of insurance to: (1) make, issue, or circulate, or cause to be made, issued, or circulated, *an estimate*, illustration, circular or statement misrepresenting with respect to a policy issued *or to be issued*:  (A) the terms of the policy; [or] (B) the benefits or advantages promised by the policy . . ." (emphasis added).

Section 541.061 further provides that it is

---

[3] *E.g.* **Spurlock v. Beacon Lloyds Ins. Co.**, 2015 WL 581682, 5-7 (Tex.App.—Eastland, 2015) (emphasis added) (unpublished opinion) (citing **May v. United Servs. Ass'n of Am.**, 844 S.W.2d 666, 669 (Tex. 1992)).
[4] *See* TEX.INS.CODE §541.151 (providing for private right of action for "unfair or deceptive act or practice in the business of insurance" as defined by §541.051, et. seq.).
[5] Id. at §541.151(2).
[6] *Aspen Specialty Ins. Co. v. Muniz Engineering, Inc.*, 514 F.Supp.2d 972, 983 (S.D.Tex. 2007)

F:\Clients\20000\20741.003 - McKeown Int'l - Princeton Ins Negligenc\ORIGINAL COMPLAINT  - 1st amended - jmw.docx - JMW

"an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by: (1) making an untrue statement of material fact; (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; [or] (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact . . ."

19.  Princeton has engaged in the unfair or deceptive act described in these two sections.  Specifically, it made and circulated an estimate of the terms of a policy – *i.e.,* the premium rate – that misrepresented the actual rate.  The misrepresentation was of a material fact, in that McKeown would have increased its hourly wage bid to U.S. Steel had it known the actual premium rate.

### *ii.  Deceptive Acts and Practices under the DTPA.*

20.  Of the "laundry list" of deceptive acts and practices set forth in §17.46(b) of the DTPA, Princeton engaged in at least the following:

> "(5) representing that goods or services have . . . characteristics [or] benefits . . . which they do not have . . ;
>
> "(12) representing that an agreement confers or involves rights . . . or obligations which it does not have or involve . . ; [and,]
>
> "(24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed . . ."[7]

Specifically, Princeton represented that the premium rate would be $5.90 when in fact it was and continues to be more than twice that.  Had Princeton not misrepresented the rate, or had it not failed to disclose the actual rate, McKeown would have, again, increased its hourly wage bid to U.S. Steel.

### *iii.  Damages, Treble Damages, Costs and Fees.*

21.  As a proximate result of Princeton's unfair or deceptive acts and practices,

---

[7]  TEX.BUS.&COMM.CODE §17.46(b)(5), (12) and (24).

McKeown has suffered damages measured by the difference in the premium quoted and that actually charged, all as detailed above.[8]

22.     Furthermore, McKeown is entitled to an additional award of up to three times the amount of actual damages.  Specifically, Princeton's unfair or deceptive acts or practices were committed knowingly – *i.e.,* they were committed with "actual awareness of the falsity, unfairness or deceptiveness of the act or practice," which may be inferred through objective manifestations.[9]

23.     McKeown is also entitled to reasonable and necessary attorney's fees and costs of court through trial, for any post-judgment motions, and any appeals to the Fifth Circuit Court of Appeals or the Supreme Court.[10]

### C)  VIOLATIONS OF TEXAS' DECEPTIVE TRADE PRACTICES ACT.

24.     The same unfair and deceptive acts and practices that give rise to liability under Texas' Insurance Code as set forth above, give rise to liability under Texas' Deceptive Trade Practices Act.  Specifically, Princeton engaged in at least the following:

> "(5) representing that goods or services have . . .characteristics [or] benefits . . . which they do not have . . ;
>
> "(12) representing that an agreement confers or involves rights . . . or obligations which it does not have or involve . . ; [and,]
>
> "(24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed . . ."[11]

---

[8] *See* TEX.INS.CODE §541.152(a) (allowing recovery of "actual damages").

[9] *See* TEX.INS.CODE §541.152(b) (allowing "the trier of fact may award an amount not to exceed three times the amount of actual damages" if "the defendant knowingly committed the act complained of."); *see also* TEX.INS.CODE §541.002 (defining "knowingly").

[10] *See* TEX.INS.CODE §541.152(a)(1) (providing for "court costs and reasonable and necessary attorney's fees").

[11] TEX.BUS.&COMM.CODE §17.46(b)(5), (12) and (24).

Furthermore, the DTPA is also violated by "the use or employment by any person of an act or practice in violation of Chapter 541, Insurance Code."[12]

25. McKeown is a consumer under the DTPA. Specifically, it sought or acquired "by purchase . . . any goods or services."[13] That is, "[p]urchase of an insurance policy is the purchase of a service within the meaning of the Texas DTPA."[14] Moreover, it does not have assets of $25 million or more.

26. Princeton's unfair and deceptive acts and practices are set forth more fully in the preceding section covering violations of Texas' Insurance Code. Those unfair and deceptive acts and practices were a producing cause of KcKeown's damages, measured by the difference in the premium quoted and that actually charged, all as detailed above.

27. Furthermore, McKeown is entitled to an additional award of up to three times the amount of actual damages. Specifically, Princeton's conduct was committed knowingly – *i.e.,* they were committed with "actual awareness , at the time of the act or practice complained of, of the falsity, deception, or unfairness of the act or practice giving rise to [McKeown's] claim . . ." which may be inferred through objective manifestations.[15]

28. McKeown is also entitled to reasonable and necessary attorney's fees and costs of court through trial, for any post-judgment motions, and any appeals to the Fifth Circuit Court of Appeals or the Supreme Court.[16]

---

[12] Id. at §17.50(a)(4).
[13] Id. at §17.45(4) (defining "consumer").
[14] *Webb v. UnumProvident Corp.*, 507 F.Supp.2d 668, 678 (W.D.Tex. 2005).
[15] *See* TEX.BUS.&COMM.CODE §17.50(b)(1) (allowing "the trier of fact may award an amount not to exceed three times the amount of economic damages" if "the trier of fact finds that the conduct of the defendant was committed knowingly."); *see also* TEX.BUS.&COMM.CODE §17.45(9) (defining "knowingly").
[16] *See* TEX.BUS.&COMM.CODE §17.50(d) (providing for "court costs and reasonable and necessary attorney's fees").

## V.  PRE- AND POSTJUDGMENT INTEREST & COSTS.

35.     McKeown seeks pre- and postjudgment interest at the rates set forth by law, as well as all recoverable costs.

## VI.  JURY DEMAND.

36.     McKeown demands trial by jury as to this action.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer, and that Plaintiff have final judgment for the following:

a)  Actual damages;

b)  an award up to three times actual or economic damages;

c)  Prejudgment and post-judgment interest as allowed by law; and,

d)  Attorneys' fees and costs of suit.

Respectfully submitted,

_____
JUSTIN M. WELCH
Texas State Bar No.:  24003876
**ATTORNEY FOR PLAINTIFF**

**A member of the Firm of:**

**BLAZIER, CHRISTENSEN, BROWDER
  & VIRR, P.C.**
Attorneys and Counselors at Law
901 S. Mopac Expy., Bldg. 5, Ste. 200
Austin, Texas 78746
512 476 2622
(Fax) 512 476 8685
email:  jwelch@blazierlaw.com